IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DOUGLAS R. BIRCKBICHLER,                )
                              Plaintiff        )
                                                  )
vs.                                              )          Civil Action No. 07-1655
                                                  )          Chief Magistrate Judge Amy Reynolds Hay
BUTLER COUNTY PRISON; BUTLER      )
COUNTY PRISON BOARD; COUNTY      )
OF BUTLER; SOUTHERN HEALTH        )
PARTNERS,                                    )
                              Defendants     )          Re: Dkt. Nos. [92] & [99]

## MEMORANDUM OPINION

Douglas Birckbichler ("Plaintiff"), a prisoner at various county jails and now currently

incarcerated in the Pennsylvania Department of Corrections, contracted AIDS.  He has brought

the instant suit against the Butler County Prison ("BCP"), the Butler County Prison Board, the

County of Butler and Southern Health Partners ("SHP"), a private medical provider under

contract with the BCP.   Plaintiff alleges that while he was most recently incarcerated at BCP, he

did not receive the drugs he needed to treat his AIDS even though he was given drugs to treat the

opportunistic diseases that AIDS essentially causes or permits to occur.  Because he has failed to

adduce evidence of a policy on the part of either Butler County or on the part of SHP, summary

judgment must be entered in favor of the Defendants.  In the alternative, because his personal

AIDS specialist physician recommended against the provision of the drugs intended to treat

AIDS while he was at BCP given Plaintiff's history of non-compliance in taking these specific

drugs and due to the anticipated short stay at BCP, and this recommendation was followed by the

1

BCP, Plaintiff cannot establish a deliberate indifference claim.

Plaintiff complained that as of June 26, 2007 (i.e., the date of his most recent incarceration in BCP)  until December 1, 2007 (i.e., the date he signed his complaint), his right to be free of cruel and unusual punishment was being violated in that the Defendants were not providing him with medical care.   In his pro se complaint, he complained that the Warden and two Deputy Wardens at BCP "refused me medical care[,]" Dkt. [17] at 2, ¶ IV.C, by their refusals to answer Plaintiff's requests, complaints and grievances and by their failure to force SHP to provide Plaintiff with care.   Plaintiff complained that BCP "refused me appropiate [sic] care by collusion of all staff to ignore my condition, symptoms, pain, suffering, sores, disfigurement, sick call slips, request slips and grievance forms." Dkt. [17] at 3, ¶ IV.4.  Plaintiff also alleged that the Butler County Prison Board, refused him care by "failing to contract with an adequate and competent medical care provider for inmates at the Butler County prison."   Id., at ¶ 5.

Next, Plaintiff alleged that Butler County "refused me and/or caused me to be refused appropriate care by failing to properly evaluate Southern Health Partners as an adequate and competent provider of medical care before entering into [a] binding contract with Southern Health Partners.  A five minute period of time on the Internet [shows that] the doctor, Dr. Wilcox [i.e, Dr. Simmon Wilcox], is neither an adequate nor competent medical doctor and that parts of his medical license are suspended as a result of criminal conduct on his part which forced him to flee the United States for a period of time.  I am sure that further investigation would have been

2

even more revealing." Dkt. [17] at 3 to 4, ¶ 6.[1]

Lastly, Plaintiff's complaints concerning SHP are as follows:

[a]ll staff of Southern Health Partners have been denying me appropiate [sic], medically necessary, life sustaining/prolonging, preventive and prophylactic care for past 5 months.  I have been and still am being refused all medically necessary testing, treatment, medications, pain relief and physical exam by Southern Health Partners that are necessary to treat appropriately, my primary diagnosis of AIDS.  This refusal to treat my primary AIDS diagnosis has caused my immune system to deteriorate to the point that I have had to suffer intolerable and unnecessary pain from opportunistic infections and other illnesses that could have been avoided by providing me with appropiate [sic] care, medication and treatments for my primary diagnosis of AIDS.  This opportunistic infections [sic] and associated illnesses are either undertreated or ignored altogether.

Dkt. [17] at 4. ¶ 7.

Presently before the Court[2] are the motions for summary judgment filed by the Defendants.  For the reasons that follow, the motions will be granted.

**Standard of Review**

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter

---

[1]  In truth, Plaintiff is either simply mistaken or lying about Dr. Wilcox.  To set the record straight, the Court takes judicial notice of the Pennsylvania Department of State website for checking the status of professionals licensed in the Commonwealth of Pennsylvania and that website reveals "[n]o disciplinary actions were found" for Dr. Simmon Lee Wilcox's medical license under the heading of "Discipline Action History."

The website may be accessed at:

http://www.licensepa.state.pa.us/Details.aspx?agency_id=1&license_id=573890&

(Site last visited on 9/10/09).

[2] The parties have consented to the plenary exercise of jurisdiction by the Magistrate Judge.  Dkt. Nos. [10]; [52]; & [55].

of law." Fed.R.Civ.P. 56(c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The moving party bears the initial burden to show or point out why there is no genuine issue of material fact.  Walters ex rel. Walters v. General Motors Corp., 209 F.Supp.2d 481, 484 (W.D. Pa. 2002).  Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In reviewing the summary judgment evidence, the Court has no duty to search the record for triable issues; rather, it need rely only on those portions of the evidentiary record to which the nonmoving party directs its attention.  See Guarino v. Brookfield Township Trustees, 980 F.2d 399, 403 (6th Cir. 1992).

"The substantive law governing the dispute will determine which facts are material, and only disputes over those facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  DeHart v. Horn, 390 F.3d 262, 267 (3d Cir. 2004)(internal quotations omitted).  An issue of material fact is genuinely disputed only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita, 475 U.S. at 587.  The inquiry involves determining whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  Brown v. Grabowski, 922 F.2d 1097, 1111 (3d

4

Cir. 1990).  If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted.  Anderson, 477 U.S. at 249-50.  Moreover, it is not enough for the nonmovant to show that there is some dispute as to facts, rather, "only disputes over facts that might affect the outcome of the suit will prevent summary judgment."  Anderson, 477 U.S. at 248.  Accord Rexnord Holdings v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994) ("[T]he mere existence of *some* factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]"); Dykes v. DePuy, Inc., 140 F.3d 31, 36 (1st Cir. 1998) ("summary judgment is not precluded by just any factual quibble").

In short, the summary judgment motion is an evidence testing device to see if there is sufficient evidence to support a party's position with respect to an issue for which that party bears the burden of proof at trial so as to justify holding a trial.   See, e.g., Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001)(summary judgment "is the . . .  moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.").

**Discussion**

**1.  Relevant right at issue**

Although Plaintiff's complaint does not specifically reference Section 1983 of the Civil Rights Act, a liberal reading of the complaint requires the Court to infer that Plaintiff is making his claim under the Civil Rights Act of 1871, codified at 42 U.S.C. § 1983 ("Section 1983").  Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir.  2001)("a litigant complaining of a violation of a constitutional right does not have a direct cause of action under

the United States Constitution but must utilize 42 U.S.C. § 1983."); Pauk v. Board of Trustees of City University of New York, 654 F.2d 856 (2d Cir 1981)(where a federal statute governing civil action for deprivation of rights provides a remedy, i.e., 42 U.S.C. § 1983, an implied cause of action grounded on Constitution is not available), overruling on other grounds as recognized in, Brandman v. North Shore Guidance Center, 636 F.Supp. 877, 879 (E.D.N.Y. 1986).

In order to prove a Section 1983 cause of action, a plaintiff must produce evidence of (1) misconduct that was committed by a person acting under color of state law and (2) that as a result of such misconduct, the plaintiff was deprived of rights, privileges or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (en banc).

As an initial matter, all of the parties appear to assume that the relevant right at issue herein is Plaintiff's Eighth Amendment rights to be free of deliberate indifference. It appears, however, that at least between June 26, 2207 and October 22, 2007, Plaintiff was a pre-trial detainee. We take judicial notice of the dockets of the Court of Common Pleas of Butler County which demonstrate that Plaintiff was housed at BCP from June 27, 2007, after he failed to make bond, until October 23, 2007, when he plead guilty to three criminal cases[3] and was sentenced

---

[3] The dockets in Criminal Case Nos. 1200 and 1201 of 2006 reveal that on June 27, 2007, bail was set for Plaintiff and bond was increased to $15,000. It appears that Plaintiff was not able to make this bond since according to the allegations of the complaint, he was being housed in BCP at least since June 26, 2007. It further appears that Plaintiff was being housed there as a pre-trial detainee because the dockets reveal that he did not plead guilty until October 23, 2007 and on that same date was sentenced as to these two cases. Plaintiff faced other charges as well, in Criminal Case No. 1179 of 2007, for which he had posted bond and to which he also plead guilty and was sentenced on October 23, 2007. The

that same date.  Thus, the Fourteenth Amendment substantive due process standards applicable

to non-convicted/non-sentenced prisoners would seem to apply here, at least from the period of

time between June 26, 2007 and October 22, 2007.  See Gary v. Modena, 2006 WL 3741364, at

*3 (11th Cir. 2006)(unpublished)(Butts was a person arrested for violation of probation and the

court stated that "[s]ince Butts was a pre-trial detainee at the time of alleged violations, Gary's

deliberate indifference claims fall under the due process clause of the Fourteenth Amendment

and not the cruel and unusual punishment prohibition of the Eight [sic] Amendment."); Brown v.

Harris, 240 F.3d 383, 388 (4th Cir. 2001)("Although the state had already 'secured a formal

adjudication of guilt' for the crime underlying Brown's probation, it had not yet secured 'a formal

adjudication' that Brown had violated his probation and should be returned to state custody. And,

if Brown was a pretrial detainee rather than a convicted prisoner, then the Due Process Clause of

the Fourteenth Amendment, rather than the Eighth Amendment, 'mandates the provision of

medical care to detainees who require it.'"); Russell v. Lazar, 300 F.Supp.2d 716, 720 (E.D.Wis.

2004) ("*Jones* did not involve a convicted prisoner but rather someone arrested on a bench

warrant and held on a detainer and alleged probation violation. The Due Process Clause rather

than the Eighth Amendment applies to § 1983 claims brought by pre-trial detainees.").

      The Court need not decide this rather difficult problem because the standard for medical

---

dockets of the Butler County Court of Common Pleas in Plaintiff's relevant criminal cases are available
at:

     http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?matterID=200285075

     http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?matterID=200285076

     http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?matterID=200638952

claims of constitutionally inadequate care are sufficiently analogous whether for convicted

prisoners under the Eighth Amendment standards or for pre-trial detainees under the Fourteenth

Amendment substantive due process standards.  The Court of Appeals recently explained in an

unpublished case that

> [a] claim by a pretrial detainee challenging the conditions of confinement
> in a state detention facility is analyzed under the Due Process Clause of the
> Fourteenth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 157-58 (3d Cir.
> 2005). Where the challenge concerns medical care received at the facility, the
> applicable standard is the one set forth in *Estelle v. Gamble*, 429 U.S. 97 (1976).
> *See Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).
> Under this standard, "plaintiffs must demonstrate (1) that the defendants were
> deliberately indifferent to their medical needs and (2) that those needs were
> serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (*citing Estelle*, 429
> U.S. at 106).

Watkins v. Cape May County Correctional Center (Medical Dept.), 240 Fed.Appx. 985, 986 (3d

Cir. 2007).  But cf. Natale v. Camden County Correctional Facility, 318 F.3d 575, 581 n.5 (3d

Cir. 2003)(suggesting that the Fourteenth Amendment may provide greater protections for pre-

trial detainees than the Eighth Amendment provides for convicted prisoners); Hubbard v. Taylor,

399 F.3d 150, 166 (3d Cir. 2005)("The district court then erred in concluding that 'pretrial

detainees are afforded essentially the same protection as convicted prisoners and that an Eighth

Amendment analysis is appropriate for determining if the conditions of confinement rise to the

level of a constitutional violation.'").

In any event, even if the Fourteenth Amendment's substantive due process standards

provide greater protections than the Eighth Amendment standards, we find that, in light of the

parties' arguments, which only contend for the applicability of the Eighth Amendment standard,

any argument that the Fourteenth Amendment's substantive due process standard[4] for pre-trial detainees provides greater protections are waived.  Hence, in light of the arguments of the parties, what the Court stated in <u>Natale</u>, applies equally here:

> In previous cases, we have found no reason to apply a different standard than that set forth in *Estelle* (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment. *See, e.g., Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir.1987).[5]
>
> We therefore evaluate the Natales' Fourteenth Amendment claim for inadequate medical care under the standard used to evaluate similar claims brought under the Eighth Amendment, the standard used by the District Court to evaluate the Natales' claim. In *Estelle*, the Supreme Court held that the Eighth Amendment proscribes deliberate indifference to prisoners' serious medical needs.

> _____
>
> [5] As the issue was not raised before us, we do not decide whether the Due Process Clause provides additional protections to pretrial detainees beyond those provided by the Eighth Amendment to convicted prisoners. *See Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 n. 9 (9th Cir. 2002) (noting that "it is quite possible[ ] that the protections provided pretrial detainees under the Fourteenth

_____

[4]  At the risk of muddying the waters even more, the Court must explain its choice of the phrase "Eighth Amendment standards." Technically, the Eighth Amendment applies only to the federal government. See <u>Estelle v. Gamble</u>, 429 U.S. 97, 101-02 (1976) (<u>citing</u> <u>Robinson v. California</u>, 370 U.S. 660 (1962)).  However, through the doctrine of incorporation, (<u>see generally</u> <u>Adamson v. People of State of California</u>, 332 U.S. 46 (1947) for explanation of the doctrine of incorporation), the Eighth Amendment **legal standards**, barring the federal government from inflicting cruel and unusual punishment on convicted prisoners, are the very same standards incorporated in the Fourteenth Amendment's substantive due process clause to bar state governments from inflicting cruel and unusual punishments on convicted prisoners.  See <u>Estelle</u>, 429 U.S. at 101-102; <u>Sistrunk v. Lyons</u>, 646 F.2d 64, 66-67 (3d Cir. 1981)(citing <u>Robinson v. California</u>).  The standards under the Eighth Amendment and the standards under the Fourteenth Amendment insofar as concerns convicted prisoners, are fundamentally identical.  <u>Furman v. Georgia</u>, 408 U.S. 238, 422 n.4 (1972)(Blackmun, J., dissenting) ("the tests for applying these two provisions are fundamentally identical.").  The Court uses the phrase "Eighth Amendment standards" to mean those standards applicable to the States which bar the States from inflicting cruel and unusual punishments upon convicted prisoners.  The Court uses the phrase "Fourteenth Amendment substantive due process standards" to mean those standards applicable to the States to bar any punishment (not just "cruel and unusual punishment") of pre-trial detainees or, more accurately, pre-sentenced detainees. <u>See</u>, <u>e.g.</u>, <u>Fuentes v. Wagner</u>, 206 F.3d 335, 341 (3d Cir. 2000) (Fourteenth Amendment substantive due process clause standard for pre trial detainees applies to criminals who have been convicted but not yet sentenced).

> Amendment in some instances exceed those provided convicted prisoners by the
> Eighth Amendment"). We have noted previously that the Due Process Clause
> provides "at a minimum, no less protection" than is provided by the Eighth
> Amendment. *Colburn v. Upper Darby Township*, 838 F.2d 663, 668 (3d Cir.
> 1988); *see also Simmons v. City of Philadelphia*, 947 F.2d 1042, 1067 (3d Cir.
> 1991).

Natale v. Camden County Correctional Facility, 318 F.3d at 581-82.  Accordingly, as in Natale,

we, too, apply the deliberate indifference standard of Estelle.

The Supreme Court has explained that analysis of a violation of the Eighth Amendment

standards involves a two pronged inquiry: (1) an objective inquiry into the qualitative nature of

the harm suffered by the victim of the alleged punishment and (2) a "subjective inquiry" into the

mind of the person inflicting the harm.  See Wilson v. Seiter, 501 U.S. 294 (1991).  The plaintiff

bears the burden of proof as to both the subjective and objective prongs for, as the Court of

Appeals has explained, in order to "survive a summary judgment on an Eighth Amendment claim

asserted under 42 U.S.C. § 1983, a plaintiff is required to produce sufficient evidence of (1) a

substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3)

causation."  Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997).  In cases such as this one  -

which involves a purported denial of medical care - to prove the subjective component of an

Eighth Amendment claim, a plaintiff has the burden of proving that the defendant acted with

deliberate indifference.  Estelle v Gamble, 429 U.S. 97 (1976); Comstock v. McCrary, 273 F.3d

693, 703 (6th Cir. 2001). "Deliberate indifference" occurs when a prison "official knows of and

disregards an excessive risk to inmate health or safety; the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists and he

must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  As a corollary of

the deliberate indifference standard, negligence by staff at the prison, medical personnel and physicians in treating prisoners is not sufficient to state an Eighth Amendment violation. Estelle, 429 U.S. at 105-06.

### 2. Proper party defendants

As an initial matter, we agree with the Butler County Defendants' argument that the only proper defendant is Butler County and not the BCP nor the Butler County Prison Board. Dkt. [100] at 3. Plaintiff named as one of the Defendants, the BCP. However, the BCP does not possess the capacity to be sued. "Capacity" refers to a party's ability to sue and be sued in federal court. Koog v. United States, 852 F. Supp. 1376 (W.D. Tex. 1994), *judgment rev'd on other grounds*, 79 F.3d 452 (5th Cir. 1996) (defining "capacity" with respect to federal courts); Ward v. Baldwin Lima Hamilton Corp., C. A. No. 84-0232, 1985 WL 2830, at *1 (E.D. Pa. Sept. 30, 1985)("'Capacity' refers to the ability of an entity to be brought into, or to use, the courts of a forum."). This court concludes that the BCP, has no capacity to be sued. Fox v. Lawrence County Jail, Civ. A. 06-1010, 2008 WL 2704546 (W.D.Pa. June 30, 2008)(County Jail lacks capacity). See also Owens v. Scott County Jail, 328 F.3d 1026, 1027 (8th Cir. 2003)("county jails are not legal entities amenable to suit."); Russell v. Mobile County Sheriff, No. Civ. A. 00-0410-CB-C, 2000 WL 1848470, at * 2 (S.D.Ala. Nov. 20, 2000) (finding that the Mobile County Jail is not a suable entity); Marsden v. Federal Bureau of Prisons, 856 F.Supp. 832, 836 (S.D.N.Y. 1994) (finding that the jail is not an entity amenable to suit); House v. Cook County Dept. of Corrections, No. 98 C 788, 1998 WL 89095, at *2 (N.D.Ill. Feb. 13, 1998) (same); May v. North County Detention Facility, No. C 93-1180 BAC, 1993 WL 300290, at *2 (N.D.Cal. July 21, 1993) (same). Accordingly, the BCP should be dismissed as a party defendant. In like

manner, if the BCP itself has no capacity to be sued, its governing Board, i.e., the Butler County

Prison Board, likewise has no capacity to be sued and hence the Board should likewise be

dismissed.  Hence, the only proper party Defendant insofar as concerns the Butler County entities

is Butler County.

### 3.  Plaintiff has failed to establish that a  policy caused a constitutional tort

In order to hold a municipal entity, such as Butler County, liable under Section 1983, the

municipal entity itself must have committed a constitutional tort, it cannot be held liable solely

on the basis of respondeat superior.  See  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.

1981) (noting there is no respondeat superior liability under Section 1983).  "Respondeat

superior is a doctrine of vicarious liability based upon public policy [and] the notion that the

person who benefits by the acts of the servant must pay for wrongs committed by the servant; the

one held liable as master need not be at fault in any way."  McClelland v. Facteau, 610 F.2d 693,

695 (10th Cir. 1979).  Hence, the only way a defendant can be liable under Section 1983 is based

upon facts showing that the defendant was personally involved in depriving the civil rights of the

plaintiff, i.e., personally engaged in wrongdoing.

The Supreme Court explained that a Section 1983 plaintiff can establish a municipal

entity's liability in the following way:

> We held in Monell v. New York City Dept. of Social Servs., 436 U.S.
> [658], 689 [1978], that municipalities and other local governmental bodies are
> "persons" within the meaning of § 1983.  We also recognized that a municipality
> may not be held liable under § 1983 solely because it employs a tortfeasor.  Our
> conclusion rested partly on the language of § 1983 itself.  In light of the statute's
> imposition of liability on one who "subjects [a person], or causes [that person] to
> be subjected," to a deprivation of federal rights, we concluded that it "cannot be
> easily read to impose liability vicariously on governing bodies solely on the basis
> of the existence of an employer-employee relationship with a tortfeasor."  *Id*., at

692.  Our conclusion also rested upon the statute's legislative history.  As stated in Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986), "while Congress never questioned its power to impose civil liability on municipalities for their own illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of others " (citing Monell, supra, at 665-683).  We have consistently refused to hold municipalities liable under a theory of respondeat superior. [citations omitted]

Instead, in Monell and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury. [citations omitted] Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 403-404 (1997).

"Liability will be imposed when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one its employees."  Colburn v. Upper Darby Tp., 946 F.2d 1017, 1027 (3d Cir. 1991).

This same analysis holds for SHP.  Natale v. Camden County Corr. Facility, 318 F.3d 575, 583 - 84 (3d Cir. 2003)("PHS [i.e., a private health care subcontractor for a jail] cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.  In order for PHS to be liable, the Natales must provide evidence that there was a relevant PHS policy or custom, and that the policy caused the constitutional violation they allege.")(footnote and citations omitted).

It is the Plaintiff's burden to prove the existence of the policy or custom (hereinafter simply "policy") and that the policy proximately caused the constitutional tort.  See, e.g., Watson

v. Abington Tp., 478 F.3d 144, 156 (3d Cir. 2007)("In addition to proving that an unlawful policy or custom existed, a plaintiff also bears the burden of proving that such a policy or custom was the proximate cause of the injuries suffered.").

The Defendants have pointed out that there is a lack of evidence as to the existence of a policy which proximately caused any constitutional tort here.   This was sufficient to meet their initial summary judgment burden so as to shift the burden to Plaintiff to come forward with such evidence of a policy that proximately caused a constitutional tort.  Plaintiff has failed to do so.

Plaintiff seeks to hold defendants liable for their alleged deliberate indifference to his serious medical needs.  In order to do so, he must adduce evidence of a policy that is itself unconstitutional or evidence that a policy was the moving force behind the constitutional tort. The only policy mentioned by Plaintiff is that "it is the policy of the Butler County Prison to not provide answers to grievances and request slips." Dkt. [110] at 1, ¶ 2.  Even accepting as fact that Butler County had such a policy, such a policy does not establish a constitutional tort.  Plaintiff does not appear to argue, and indeed could not argue that this policy itself is unconstitutional, since Plaintiff is not constitutionally entitled to any grievance procedure, let alone an effective one.  Overholt v. Unibase Data Entry, Inc., 221 F.3d 1335 (Table), 2000 WL 799760, at *3 (6th Cir. 2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation.") (citations omitted); Caldwell v. Hall, No. CIV.A. 97-8069, 2000 WL 343229, at *2 (E.D.Pa. March 31, 2000)("The failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."); Orrs v.

Comings, No. CIV.A. 92-6442, 1993 WL 418361, at *2 (E.D.Pa. Oct. 13, 1993)("But an allegation that a defendant failed to act on a grievance or complaint does not state a Section 1983 claim.").

Hence, it remains open to Plaintiff to show that this alleged policy of not responding to grievances was the "moving force" behind, or, in other words, the proximate cause of the constitutional tort. There is simply no way that such a policy can be said to have caused any constitutional tort and indeed, Plaintiff has not offered any evidence otherwise. Plaintiff argues that the Butler County "defendants could have forced Southern Health Partners to provide me with appropriate care and did not do so." Dkt. [110] at 2. However, Plaintiff provides no evidence of such, as his is burden and for this reason alone, summary judgment should be granted to Butler County. Indeed, Plaintiff fails to make clear how such non-medical individuals as the Warden and or Deputy Wardens of BCP would be able to force SHP to provide him with "appropriate care" given that they have no medical expertise by which to determine what is appropriate medical care. In fact, it appears from the record, that they rely on SHP and its employees and/or independent contractors to determine what is appropriate medical care.[5]

---

[5] Cf. McCoy v. Beard,, No. CIV.A. 07-515, 2008 WL 3544772, at *3 (W.D.Pa., Aug.12, 2008):

The general rule is that where a prisoner is being treated by medical personnel, non medical prison officials cannot be deliberately indifferent for failing to intervene in the medical treatment. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir.1993) ("The only allegation against either of these two [prison official] defendants was that they failed to respond to letters Durmer sent to them explaining his predicament. Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.") (footnoted omitted); *Thomas v. Zinkel*, 155 F.Supp.2d 408, 413 (E.D.Pa. 2001) ("Prison authorities who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. Similarly, health care administrators cannot be found deliberately

15

Hence, there is no evidence to support Plaintiff's argument that Butler County could have forced SHP to treat Plaintiff appropriately.

There is one other possible claim that Plaintiff could be making against Butler County. Plaintiff asserted in his complaint that Butler County refused him appropriate care by "failing to properly evaluate Southern Health Partners as an adequate and competent provider of medical care before entering into a binding contract with Southern Health Partners." Dkt. [17] at 3. Again, Plaintiff offers not one scintilla of evidence, as is his burden, of the existence of any policy with respect to the choice of SHP or of contracting with health care providers.  At most, he has alleged Butler County was negligent in its choice of SHP, and he did so without any scintilla of evidence supporting even a claim of negligence.[6]  Even if he had proffered evidence of Butler County's negligence in the choice of SHP, such is simply insufficient, as a matter of law, to establish a constitutional tort.  Daniels v. Williams, 474 U.S. 327, 333 (1986)("injuries inflicted by governmental negligence are not addressed by the United States Constitution"); Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992), cert. denied, 509 U.S. 923 (1993) ("[L]iability under § 1983 must be predicated upon a 'deliberate' deprivation of

---

indifferent when an inmate is receiving care from a doctor.") (internal citations and quotations omitted). This rule makes sense because a non-physician layperson cannot be deliberately indifferent to a prisoner's medical needs when he knows that the prisoner is being seen by and treated by physicians, notwithstanding the prisoner's complaints about the physician's treatments and/or alleged mis-diagnosis because a non-physician layperson has no expertise whereby to judge the adequacy vel non of a physician's treatment. While the DOC Defendants may have known of Plaintiff's complaints about his treatment, the DOC Defendants had no expertise by which to question the medical determination of the Medical Defendants that Plaintiff was diabetic and needed to be medicated for that condition.

[6]  This is true notwithstanding his bald allegations against Dr. Wilcox and his medical license, which the Court noted above to be simply untrue.

16

constitutional rights by the defendant," and not on negligence.); <u>Finch v. San Francisco Sheriff's</u> <u>Dept.</u>, NO. C 02-2092CRB, 2002 WL 851073, *1 (N.D. Cal. May 2, 2002)("[t]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986); *Daniels v. Williams*, 474 U.S. 327, 328 (1986).").  Accordingly, for any or all of the foregoing reasons, Butler County is entitled to summary judgment.

As noted earlier, the same principles which are required to be shown in order to render the County liable, i.e., the demonstration of a County policy that caused the constitutional tort, apply to SHP.  The above analysis with respect to the County is equally applicable to SHP, perhaps, even more so.  Plaintiff points to no evidence of any policy on the part of SHP, let alone a policy that caused him any constitutional tort.

**4.  No deprivation of a constitutional right was caused**

In the alternative, even if we assume for the sake of argument that Plaintiff had produced sufficient evidence of a policy on the part of the Defendants, Plaintiff has failed to adduce sufficient evidence that the policy caused a constitutional deprivation because he failed to show that he was denied a constitutional right.  If no constitutional violation occurred, a policy cannot be said to have caused such non-existent violation.

SHP provided evidence of Plaintiff's medical and jail records.  Those records demonstrate that Plaintiff had past incarcerations in BCP and that the staff, including the medical staff, there knew him, and knew he had AIDS and had previously treated him and had consulted

with Plaintiff's personal AIDS physician, Dr. Deborah McMahon[7] at PACT, i.e., Pittsburgh

AIDS Center for Treatment.

Those medical records also establish that Plaintiff received extensive medical treatment

during the time spent at BCP.  In fact, on June 27, 2007, one day after he was incarcerated in

BCP, while he was talking with a counselor, he became lethargic and could barely sit in his chair,

he was noted to be very thin and frail and so he was sent by medical staff to the emergency room

of a local hospital via ambulance.  Dkt. [92-6] at 7.  Those medical records further establish that

Plaintiff was extensively treated while he was at BCP throughout June to December 2007. This

was sufficient to shift the burden to Plaintiff for him to come forward with his evidence to show

deliberate indifference.

He produced no evidence in response to the summary judgment motions, other than

conclusory statements, which do not create a genuine factual dispute in the face of his medical

records that establish Plaintiff received medical treatment for AIDS, if only for the "symptoms"

i.e., the opportunistic diseases and not for the AIDS virus itself.  See Dkt. [104] at 1 to 6. Lujan

v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (the non-moving party may not defeat a

properly supported summary judgment motion by simply substituting the "conclusory allegations

of the complaint or answer with conclusory allegations of an affidavit.").  Accordingly, summary

judgment should be granted to Defendants.  See e.g., Norris v. Frame, 585 F.2d 1183, 1186 (3d

---

[7]  The Court takes judicial notice of the fact that Dr. Deborah McMahon, is an Associate Professor of Medicine and the Clinical Director, HIV/AIDS Care Center at UPMC.

http://www.dept-med.pitt.edu/id/faculty_info.aspx?fp=5057

(Site last visited 9/11/09).

Cir. 1978) ("Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim."); Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980) ("[A] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment."); Daniels v. Delaware, 120 F.Supp.2d 411, 427 (D.Del. 2000) ("courts in this circuit have repeatedly recognized that deliberate indifference cannot be established where an inmate receives treatment, even if that treatment is not exactly the type of treatment the inmate requests."); Farley v. Doe, 840 F.Supp. 356 (E.D.Pa. 1993) (holding that plaintiff did not establish constitutional violation where plaintiff received extensive medical treatment, but treatment was not entirely to his liking).

Although he did not produce evidence, other than his sworn conclusory statements, the heart of Plaintiff's argument is that he should have been receiving different treatment, namely, he should have been receiving HAART medication.  HAART stands for "highly active anti-retroviral therapy" which apparently directly attacks the AIDS virus.  Instead, Plaintiff complains that he was only receiving treatment for the opportunistic diseases which AIDS causes.  Perhaps the best explanation in laymen's terms would be that Plaintiff complains they were treating the symptoms of his AIDS, i.e., the opportunistic infections, and not the cause of his AIDS, i.e., the HIV.

In response to Plaintiff's argument, SHP included in the summary judgment motion evidence to establish that the medical staff had Plaintiff sign a release of information for Dr. McMahon, Dkt. [92-6] at 32, which, contrary to Plaintiff's allegations, authorized Dr. McMahon to speak with SHP.  See Dkt. [104] at 1, ¶ 2 ("That, my personal physician, Dr. McMahon, was

19

not responsible for my care while I was incarcerated.  In fact, defendants did not have my consent to discuss my care with her.").  But see Dkt. [92-6] at 32 (Authorization for Release of Medical Information to Correctional Facility, authorizing Dr. McMahon, "to provide any information, they may have acquired while attending me . . . . [which] may include the following items: . . . Any other medical/dental/psychiatric services I may have previously had, currently seeking, or **future treatment plans**")(emphasis added).[8]   In addition, at the bottom of the signed release, there is a notation from someone at the BCP to Dr. McMahon's office that reads "Doug is back in our jail  – he has lost significant weight – has not been on any meds + refusing all meds from us – claims Lymes."  Dkt. [92-6] at 32.[9]  See also Dkt. [119-2] at 2 (Dr. Kerr's recounting of the notation).  As a consequence of the signed release, the Defendants received Plaintiff's medical records from Dr. McMahon.

In addition, not only did SHP receive records from Dr. McMahon, medical personnel at BCP contacted Dr. McMahon and/or her office.  The medical records from Dr. McMahon apparently indicated that Plaintiff had "not been on any anti retrovirals for the past year and [he]

---

[8]  To the extent that Plaintiff argues he did not provide authorization for the Defendants to speak to Dr. McMahon about his treatment, such is immaterial to his current Eighth Amendment claim and, in fact, that the Defendants consulted such an expert in the field as to Plaintiff's treatment and who was his personal AIDS physician, demonstrates a mindset quite incompatible with deliberate indifference, especially given that the Defendants apparently followed Dr. McMahon's recommendations as will be seen shortly.

[9]  See also Dkt. [92-6] at 4 (Intake Nursing Assessment dated 6/28/07, noting that "I/M [i.e., inmate] very thin, frail, weak –  states he can't eat – refuses any + all meds."  But see Dkt. [104] at 3, ¶ 11 (Plaintiff stating that "I took all medications that were prescribed to me[,]" apparently meaning thereby that he took his medications during the June 2007 to December 2007 time period but not denying that previously he had refused medications).  For present purposes, we accept as true that Plaintiff took all medications during the relevant time period of the complaint, i.e., June to December of 2007, that were prescribed for him.

has a history of not being compliant with his medications" and that "[h]is last CD-4 count[10] on

February 15 (2007) was 15." Dkt. [93] at 2, citing Exhibit B, p. 115. See also Dkt. Nos. [92-5] at

26; [92-6] at 9 to 10.   In response to being contacted by medical personnel at BCP, Dr.

McMahon recommended that Plaintiff not be given HAART.  See Dkt. [92-5] at 21.[11]  As

explained by Defendants:

> Dr. Wilcox of SHP, in creating a treatment plan and prescriptions for Plaintiff's
> AIDS condition, consulted with Plaintiff's outside infectious disease specialist,
> Dr. McMahon. Ex. B, p. 97.  Based upon that consultation, it was determined that
> Plaintiff would be given the following prescriptions on July 17, 2007: Difulcan, if
> Plaintiff developed thrush; Dapsone for prevention of pneumonia; and
> Zithromycin. Exhibit B, p. 97.  The HAART treatment which was prescribed for
> Plaintiff prior to his incarceration at the Butler County Prison was not
> recommended by Dr. McMahon, due to Plaintiff's short anticipated length of stay
> and history of non-compliance in taking HAART medications.

Dkt. [93] at 2 to3.  Defendants further produced evidence, explaining the rationale of not

providing Plaintiff with HAART.  Specifically, they provided medical opinion from Dr. Mary

Beth Kerr, who explained that

> Dr. McMahon did not recommend restarting HAART at that time.  Unfortunately,
> Mr. Birckbichler's prior history of non-compliance with HAART had put him at
> increased risk of development of resistance to these medications.  Given the fact
> that his incarceration at Butler County Prison was likely to be relatively short
> term, it was felt that it would be in the inmate's best interest to defer HAART
> until he was transferred to a state institution where longer term continuity of care
> would be assured since missing even a few doses of these medications risks

---

[10]  CD-4 Count is apparently a measure of the well being of Plaintiff's immune system and the
lower the count the worse the condition of the immune system.  See, e.g.,

http://www.webmd.com/hiv-aids/cd4-count-what-does-it-mean

(Site last visited 9/11/09).

[11]  Dkt. [92-5] at 21 wherein it is noted that "Pt. HIV positive >15 yr.  Pt.['s] HIV MD [i.e.,
Patient's HIV Doctor]  D/C meds [i.e., discontinued meds, i.e., HAART meds] because Pt. Non
compliance. Med D/C due to potential development of resistance."

development of serious problems with drug resistance. **Thus, this decision to withhold HAART from Mr. Birckbichler during his period of incarceration at Butler County Prison was made by his own physician, Dr. McMahon, and not by Dr. Wilcox or any other provider affiliated with Southern Health Partners.** It should be noted that Dr. McMahon made this decision with the full knowledge of Mr. Birckbichler's severely immunocompromised status. In fact, his CD-4 count was 15 in February 2007, at which time Mr. Birckbichler had chosen freely not to take his prescribed HAART, or any other medication to prevent opportunistic infections. This is despite the fact that HAART had been provided to Mr. Birckbichler during a January 2007 incarceration at Butler County Prison.

Dkt. [119-2] at 3.[12]

Plaintiff attempts to attack this expert opinion. See Dkt. [104] at 3 to 4.[13] However, his

attacks all go to the weight to be afforded the opinion of the expert (e.g., the expert did not have

all of his medical records, Dkt. [104] at 3 to 4, ¶ 13; she was not an AIDS expert, Dkt. [104] at 3,

---

[12] It should be noted that upon working on the summary judgment motions, it was discovered that SHP had failed to attach Dr. Kerr's expert opinion and her C.V. to the motion as the Exhibits C and D referred to in the summary judgment motion. Upon discovery of this, an employee of the Clerk's office contacted SHP's counsel to inform him of this omission, which he rectified by filing the supplement to the summary judgment motion. In the summary judgment motion mailed to Plaintiff, the motion was accompanied by Dr. Kerr's opinion because in Plaintiff's response to the summary judgment motion, Plaintiff attacked Dr. Kerr's opinion.

[13] Among his many attacks, Plaintiff asserts that the "defendants misled Dr. McMahon to get the responses they wanted from her." Dkt. [104] at 2, ¶ 4. Plaintiff fails to explain how he knows this and so despite it being sworn to under penalty of perjury, it is simply insufficient to create a genuine issue of material fact. The rule is that an affidavit must, at the least, reveal the basis of the affiant's personal knowledge of the facts attested to so as to be competent evidence under the requirements of Rule 56. See, e.g., Beyah v. Coughlin, 789 F.2d 986, 990 (2d Cir. 1986) ("Rule 56(e) provides that '[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'"); Ways v. City of Lincoln, 909 F.Supp. 1316, 1322 (D. Neb. 1995)(commenting on the requirement of Rule 56(e) that the affidavit "show affirmatively that the affiant is competent to testify as to the matters stated therein", the court concluded that "[a]t a minimum this means that the affidavit must establish the competence of the affiant to testify about the subject matter of his or her affidavit."). Plaintiff's verified response lacks such an affirmative demonstration of how Plaintiff knows that the Defendants allegedly misled Dr. McMahon. Given that Dr. McMahon was his personal physician, he could certainly have made inquiry of her and/or obtained an affidavit from her. That he did not redounds to his detriment.

22

¶ 8) not to the admissibility of it.  Hence, Plaintiff offers nothing that would render Dr. Kerr's expert opinion incompetent for consideration on summary judgment and so the Court properly considers it in disposing of the instant motions.  In the face of the evidence proffered by the Defendants, it is not clear to this Court that Plaintiff has even established the objective prong of a deliberate indifference claim, i.e., he has not established that he was "denied the minimal civilized measure of life's necessities" as is required to establish the objective prong of a deliberate indifference claim. Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000).  However, even if he could be said to have established the objective prong, given the advice of Dr. McMahon, which Dr. Wilcox reasonably relied upon, it is clear that Plaintiff fails to establish the subjective prong of a deliberate indifference claim.   Hence, because Plaintiff has failed to present evidence to establish that his Constitutional right to be free of deliberate indifference was violated, *a fortiori*, he has failed to establish that a policy of the Defendants caused him any such non-existent deprivation of his constitutional rights.

The Court has no hesitancy in concluding that no reasonable juror could find for Plaintiff on this record before the Court.  Hence, the Defendants' summary judgment motions are properly granted.


THESE THINGS ARE SO ORDERED this 16th day of September, 2009.


/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

23

cc:    Douglas R. Birckbichler
        GV3952
        SCI Greene
        175 Progress Drive
        Waynesburg, PA 15370

        All counsel of record by Notice of Electronic Filing